# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

```
-----------------------------------------------------X
VERONIQUE HEPLER, individually and        :
on behalf of all others similarly situated, :
                                          :
                                          :
              Plaintiffs,                 :
                                          :          Civil Action No. 13-cv-2815-LDW-WDW
      v.                                  :
                                          :
ABERCROMBIE & FITCH CO., and              :
ABERCROMBIE & FITCH                       :
STORES, INC.,                             :
                                          :
              Defendants.                 :
-----------------------------------------------------X
```

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR CONDITIONAL CERTIFICATION
## <u>AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)</u>

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone:  (914) 934-9200
Facsimile:  (914) 934-9220

*Attorneys for Plaintiffs*

Other Counsel Listed on Signature Page

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

I.      PROCEDURAL HISTORY AND PERTINENT FACTS ................................. 3

     A.    Procedural History ................................................................ 3

     B.    Statement of Facts ................................................................ 4

     C.    Abercrombie's Common FWW Policy ................................. 5

II.    ARGUMENT ................................................................................. 6

     A.    Conditional Certification Under the FLSA ......................... 6

     B.    Plaintiffs' Burden Is Minimal at the Notice Stage. ............. 8

     C.    Fluctuating Workweek Collective Action Claims Are Routinely Certified. ........ 12

     D.    Abercrombie's Arguments Against Conditional Certification Are Unavailing. .. 16

          1.    Abercrombie Improperly Urges Merits-Based Arguments...................... 17

          2.    Abercrombie's Argument That AMs Are Exempt from Overtime Is Contradictory and Premature. ........................ 19

     E.    The Court Should Compel Abercrombie to Produce Contact Information ......... 21

CONCLUSION ............................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Alli v. Boston Market*,
   2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011) .................................................. 20

*Alonso v. Uncle Jack's Steakhouse, Inc.*,
   648 F. Supp. 2d 484  (S.D.N.Y. 2009).............................................................................. 20

*Aquilino v. Home Depot, Inc.*,
   2006 U.S. Dist. LEXIS 66084, at \*3 (D.N.J. Sept. 6, 2006) ............................................ 6

*Aros v. United Rentals, Inc.*,
   269 F.R.D. 176 (D. Conn. 2010)....................................................................................... 20

*Bell v. Citizen Fin. Grp., Inc.*,
   2010 U.S. Dist. LEXIS 91172 ......................................................................................... 22

*Bouder v. Prudential Fin., Inc.*,
   2008 U.S. Dist. LEXIS 25103 ......................................................................................... 22

*Braunstein v. E. Photographic Labs., Inc.*,
   600 F.2d 335 (2d Cir. 1978)............................................................................................... 6

*Bredbenner v. Liberty Travel, Inc.*,
   2009 U.S. Dist. LEXIS 67122 (D.N.J. July 31, 2009)..................................................... 16

*Brumley v. Camin Cargo Control, Inc.*,
   2010 U.S. Dist. LEXIS 144198 (D.N.J. Apr. 20, 2010) .................................................. 15

*Chowdhury v. Duane Reade, Inc.*,
   2007 U.S. Dist. LEXIS 73853  (S.D.N.Y. Oct. 2, 2007) ................................................. 20

*Cohen v. Gerson Lehrman Grp., Inc.*,
   2010 U.S. Dist. LEXIS 1666 (S.D.N.Y. Jan. 7, 2010)....................................................... 9

*Cunningham v. Elec. Data Sys. Corp.*,
   754 F. Supp. 2d 638 (S.D.N.Y. Dec. 14, 2010) .......................................................... 7, 20

*Cunningham v. Elec. Data Sys. Corp.*,
   2010 U.S. Dist. LEXIS 132127 (S.D.N.Y. Dec. 14, 2010) ............................................... 8

*Damassia v. Duane Reade, Inc.*,
   250 F.R.D. 152 (S.D.N.Y. 2008) ..................................................................................... 21

*Damassia v. Duane Reade, Inc.*,
    2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 4, 2006) ....................................7, 10, 18, 20

*Davis v. Abercrombie & Fitch Co.*,
    2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 22, 2008) .....................................11, 17, 21

*Deloitte & Touche Overtime Litig.*,
    2011 U.S. Dist. LEXIS 144977 (S.D.N.Y. Dec. 16, 2011) ...............................................21

*In re: Enterprise*,
    2010 U.S. Dist. LEXIS 82961 .........................................................................................22

*Elliott v. Amspec Servs., LLC*,
    2011 U.S. Dist. LEXIS 136503 (D.N.J. Nov. 29, 2011)...............................................3, 16

*Ferreira v. Modell's Sporting Goods, Inc.*,
    2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012) ...............................................20

*Gibbons v. Office Depot, Inc.*,
    2013 U.S. Dist. LEXIS 25169 (D.N.J. Feb. 20, 2013) .....................................................15

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
    678 F. Supp. 2d 89 (E.D.N.Y. Jan. 15, 2010) ..................................................................11

*Gardner v. W. Beef Props.*,
    2013 U.S. Dist. LEXIS 56511 (E.D.N.Y. Mar. 25, 2013) .................................................19

*Gjurovich v. Emmanuel;s Marketplace, Inc.*,
    282 F. Supp. 2d 101 (S.D.N.Y. 2003).........................................................................10, 11

*Gortat v. Capala Brothers, Inc.*,
    2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010) .......................................... *passim*

*Guttentag v. Ruby Tuesday Inc.*,
    2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013)..................................................20

*Hinterberger v. Catholic Health Sys.*,
    2009 U.S. Dist. LEXIS 97944 ....................................................................................11, 21

*Hipp v. Liberty Na''l Life Ins. Co.*,
    252 F.3d 1208 (11th Cir. 2001) .........................................................................................9

*Hoffman v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ....................................................................................6

*Hoffman-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)..................................................................................6, 7. 22

*Ibea v. Rite Aid Corp.*,
  2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011) ...........................................8, 21

*Indergit v. Rite Aid Corp.*,
  2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010)..............................................21

*Jacob v. Duane Reade, Inc.*,
  2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012)..............................................21

*Jason v. Falcon Data Com, Inc.*,
  2011 U.S. Dist. LEXIS 77352 (E.D.N.Y. July 18, 2011) ..............................................18

*Kenyatta-Bean v. Hous. Auth. of New Orleans*,
  2005 U.S. Dist. LEXIS 36667 (E.D. La. Nov. 18, 2005) ..................................................6

*Krueger v. New York Tel. Co.*,
  1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993) ................................................11

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (E.D.N.Y. 2008) ......................................................................11, 18

*Lloyd v. J.P. Morgan Chase & Co.*,
  2013 U.S. Dist LEXIS 129102 (S.D.N.Y. Sept. 9, 2013)..............................................11

*Malloy v. Richard Fleischman & Assocs. Inc.*,
  2009 WL 1585979 (S.D.N.Y. June 3, 2009) ..................................................................8

*Mitchell v. Abercrombie & Fitch Co.*,
  225 Fed. Appx. 362 (6th Cir. 2007)..............................................................18, 19, 20

*Mitchell v. Abercrombie & Fitch Co.*,
  428 F. Supp. 2d 725 (S.D. Ohio 2006) ........................................................................19

*Morgan v. Family Dollar Stores, Inc.*,
  551 F.3d 1233 (11th Cir. 2008) ..........................................................................7, 9, 18

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)............................................................................. *passim*

*Ott v. Publix Super Mkts., Inc.*,
  2013 U.S. Dist. LEXIS 63581 (M.D. Tenn. May 3, 2013)..........................................16, 21

*Pippins v. KPMG, LLP*,
     2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012)....................................................8, 11

*Rahman v. Cargill Meat Solutions Corp.*,
     2006 U.S. Dist. LEXIS 57333 (M.D. Pa. Aug. 14, 2006) ...................................................7

*Ravenell v. Avis Budget Car Rental, LLC*,
     2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) ......................................... *passim*

*Realite v. Ark Rests. Corp.*,
     7 F. Supp. 2d 303 (S.D.N.Y. 1998) ...................................................................10, 11, 12

*Rubery v. Buth-Na-Bodhaige, Inc.*,
     569 F. Supp. 2d 334 (W.D.N.Y. 2008) ...........................................................................21

*Salomon v. Adderley Indus., Inc.*,
     847 F. Supp. 2d 561 (S.D.N.Y. 2012)..............................................................................20

*Sealy v. Keiser Sch. Inc.*,
     2011 U.S. Dist. LEXIS 152369 (S.D. Fla. Nov. 8, 2011)..................................................16

*Masson v. Ecolab, Inc.*,
     2005 U.S. Dist. LEXIS 18022 (S.D.N.Y. Aug. 17, 2005) ................................................12

*Sexton v. Franklin First Fin., Ltd.*,
     2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009) ...................................10, 12, 21

*Smith v. Lowe's Cos.*,
     2005 U.S. Dist. LEXIS 9763 (S.D. Ohio May 11, 2005) ................................................16

*Stillman v. Staples, Inc.*,
     2008 U.S. Dist. LEXIS 32853 (D.N.J. Apr. 22, 2008) ...................................................22

*Wills v. RadioShack Corp.*,
     2013 U.S. Dist. LEXIS 159727 (S.D.N.Y. Nov. 7, 2013) ......................................6, 13, 15

*Winfield v. Citibank, N.A.*,
     2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012)..................................................21

*Young v. Cooper Cameron Corp.*,
     229 F.R.D. 50 (S.D.N.Y. 2005) ......................................................................................11

*Youngblood v. Family Dollar Stores, Inc.*,
     2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011) .................................................21

*Zaniewski v. PRRC Inc.*,
    848 F. Supp. 2d 213 (D. Conn. 2012)..................................................................18, 20, 21

## STATUTES, RULES & REGULATIONS

29 C.F.R. § 778.114.............................................................................................. *passim*

29 C.F.R. § 778.114(a).................................................................................................13

29 U.S.C. § 216(b) .............................................................................................. *passim*

29 U.S.C. § 255.............................................................................................................3

Department of Labor Final Labor, Final Rule,
    76 Fed. Reg. 18,8323 (Apr. 5, 2011) ......................................................................13, 14

Notice of Proposed Rulemaking,
    73 Fed. Reg. 43654 (Jul. 28, 2008) ............................................................................13

## OTHER AUTHORITIES

Abercrombie website, News Release (June 10, 2014),
    *available at* http://www.abercrombie.com/anf/investors/investorrelations.html.................4

**INTRODUCTION**

Plaintiff Veronique Hepler brought this Fair Labor Standards Act ("FSLA") case "on behalf of all assistant managers and other individuals paid by the same compensation method as Plaintiff but holding different titles employed by Abercrombie [Defendants Abercrombie & Fitch Co. and Abercrombie & Fitch Stores, Inc.] at its stores within the United States."  Complaint at ¶ 1 (ECF Doc. 1).  Plaintiff Hepler, joined by the other current opt-in Plaintiffs, pursuant to 29 U.S.C. § 216(b), now moves for conditional certification and notice to all Salaried Non-Exempt Associates[1] employed by Abercrombie since May 10, 2010 in the United States of America (except for Alaska, California and New Mexico) who were paid pursuant to Defendant's Supplemental Pay method.  Such an order is mandated by the governing precedent holding that conditional certification motions should be granted when plaintiffs make a "modest factual showing" to meet their minimal burden of establishing that employees are similarly situated.  *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) ("*Hertz*") (a "modest factual showing" requires "a low standard of proof because the purpose" at the conditional certification stage is "merely to determine *whether* similarly situated plaintiffs do in fact exist.") (internal quotation marks omitted).

This case is perfectly suited for FLSA collective action conditional certification because the issue presented in the litigation is an interpretation of law to a common policy – namely whether Abercrombie has met the prerequisites for applying the fluctuating workweek ("FWW")

---

[1] These are the terms used by Abercrombie in its policy handbook, *see* Lesser Declaration ("Lesser Decl.") Ex. A at AF00032455 for convenience hereinafter, rather than repeating Salaried Non-Exempt Associates (or an awkward acronym), the putative collective group will be referred to as "AMs."  Also for convenience hereinafter, exhibits to the Lesser Declaration shall be in the form of "Ex. __" and, if referring to a declaration, have the last name of the declarant with the Exhibit designation in parenthesis, *e.g.*, "Hepler (Ex. B) at __."  By the terms of Abercrombie's policy, AMs in the states of Alaska, California and New Mexico are treated differently and hence are not part of the putative collective.

1

method pursuant to 29 C.F.R. § 778.114.  There is no dispute that Defendants paid all AMs

nationwide by a common FWW compensation policy they referred to as "Supplemental Pay."

Abercrombie's policy, in relevant part, clearly states:

**SUPPLEMENTAL PAY**

[AMS] receive a weekly base salary for all hours worked each week.  This base salary will be paid for all hours worked in the week, regardless of the number of hours worked. . . [AMs] working in states other than California, Alaska and New Mexico are eligible for hourly *Supplemental Pay* for hours worked in excess of 40 each week. . . Since the [AMs] base salary already includes compensation for all hours worked, an associate who works more than forty hours is entitled to an additional ½ time supplement for all hours worked over 40 in the work week. . . All benefit hours must be paid on 8 straight time hours.  Benefit hours, excluding sick pay, will not count as hours worked or accumulated towards the calculation of supplemental pay.  Hours worked on a holiday must be paid based on 8 straight hours (this is in addition to the 8 hours of holiday pay).  Only hours worked and sick pay hours are to be accumulated towards the calculation of supplemental pay.  Benefit hours include emergency absence, vacation, holiday, personal day, and jury duty.

**HOLIDAY PAY**

[AMs] will receive 8 hours of holiday pay, plus regular wages for all hours worked on holidays…

*See* Lesser Decl. Ex A. at AF00032450-51, AF00032455, AF00032464, AF00032489,

AF00032249-51.  However, the problem for Abercrombie is that in addition to paying AMs half-

time overtime pursuant to its Supplemental Pay policy, as explicitly stated in its own policy

above, it also paid the same AMs other premiums, such as holiday pay.  *See* Hepler (Ex. B) at 1;

Marceau (Ex. C) at 1; Gibbs (Ex. D) at 1; Roberts-Crawford (Ex. E) at 1; Hoffman (Ex. F) at 1;

Chan (Ex. G) at 1.  Such a practice violates the FWW method, *see* pages 12-15, below.

Plaintiffs' motion should be granted so that prompt notice of this lawsuit can be sent to other AMs.[2]  *See, e.g., Elliott v. Amspec Servs., LLC*, 2011 U.S. Dist. LEXIS 136503, at *5-6 (D.N.J. Nov. 29, 2011) (conditionally certifying collective action in analogous fluctuating workweek case).  Inasmuch as the statute of limitations for FLSA claims runs until an opt-in files a consent with the Court (*see* 29 U.S.C. § 255), Plaintiffs are moving to preserve the rights of the putative collection action members.

**I.    PROCEDURAL HISTORY AND PERTINENT FACTS**

    **A.    Procedural History**

On May 10, 2013, Plaintiff Veronique Hepler ("Hepler") filed a Complaint (ECF Doc. 1) against Abercrombie alleging violations of the FLSA on behalf of herself and similarly situated employees pursuant to 29 U.S.C. § 216(b).  Soon thereafter, Edit Buckland ("Buckland") and Dominique Marceau ("Marceau") joined this action as party plaintiffs pursuant to 29 U.S.C. § 216(b).  ECF Docs. 4, 11.  After answering, the Court denied Abercrombie's request for leave to file a motion to transfer venue. ECF Doc. 22.  Less than two months after the initial conference, Plaintiffs filed their letter requesting permission to move for conditional certification.  ECF Doc. 32. Abercrombie then began trying to avoid facing a liability determination as to the hundreds of employees it paid pursuant to the Supplemental Pay policy by beginning a campaign to "pick-off" the Plaintiffs one-by-one with Rule 68 offers of judgment by providing such offers to Hepler, Buckland and Marceau.  Buckland accepted her offer on March 4, 2014 (ECF. Doc. 33), and while – incredibly – Abercrombie extended Rule 68 offers of judgment to another twenty  individuals (including two consecutive offers to one present

---

[2] Although not required to be shown, there can be no doubt that other current and former AMs will have interest in such a notice inasmuch as 23 current and former AMs already have opted in to this case pre-Court notice.  *See* note 3 *infra*.

employee),[3] neither Hepler nor Marceau accepted their offers (which were, in any event, insufficient to cover all the relief obtainable) and, in addition they have been joined by four other opt-ins who have not received offers of judgment and who remain before the Court.

**B.      Statement of Facts**

"Abercrombie & Fitch Co. is a leading global specialty retailer of high-quality, casual apparel for Men, Women and kids with an active, youthful lifestyle." Abercrombie website, News Release (June 10, 2014), *available at* http://www.abercrombie.com/anf/investors/ investorrelations.html.  As of "the end of the first quarter [of 2014], the Company operated 842 stores in the United States and 157 stores across Canada, Europe, Asia and Australia." *Id.*

Plaintiffs are among the current and former AMs who were paid pursuant to Defendants' FWW policy.  Plaintiffs allege that Abercrombie willfully violated the FLSA by failing to comply with its overtime requirements concerning fluctuating workweek payment for overtime. Complaint at ¶¶ 1, 17-19, 23-29, 43-45.  Instead of paying overtime at time and one-half of the employees' regular rate of pay for all hours worked over 40 in a week, Abercrombie paid overtime at one-half of the regular rate of pay.  *Id.*  However, Abercrombie failed to meet the strict requirements of the FLSA with respect to the FWW.  *See* pages 12 -15 *infra.*

---

[3] The twenty opt-ins who have been presented with and have accepted Rule 68 offers of judgment are:  Elsie Turkovich (ECF Doc. 49); Keith Arnold (ECF Doc. 51); Dennis Tehir (ECF Doc. 52); Carig Pickett (ECF Doc. 65); Ryan Witham (ECF Doc. 66); Jenny Sam (ECF Doc. 67); Matthew Allen (ECF Doc. 68); Kristin Dempsey (ECF Doc. 80); Adriana Franceschi (ECF Doc. 81); Mark Goudy (ECF Doc. 82); Mandy Kagol (ECF Doc. 83); Ryan Palermo (ECF Doc. 84); Marie-France Philippone (ECF Doc. 85); Jenny Sam (ECF Doc. 86); Tiffany Schwab (ECF Doc. 87); Dalong Sivongxay (ECF Doc. 88); Lauren Talmadge (ECF Doc. 89); Jason Tanner (ECF Doc. 90); Erika White (ECF Doc. 91); and Brooke Williams (ECF Doc. 92).  The four additional opt-ins who have filed consents to become party plaintiffs but have not received offers of judgment from Abercrombie are:  Hillary Gibbs (ECF Doc. 75); Shurika Roberts-Crawford (ECF Doc. 79); Reed Hoffman (ECF Doc. 94); and Cynthia Chan (ECF Doc. 95).

Abercrombie acknowledges that it uses the FWW method to pay AMs at a rate of "one-half the regular hourly rate for all overtime hours worked" which it refers to as "Supplemental Pay," but claims that its policy complied with the FLSA. Ex. H at ¶ 7 (Declaration of Luke Adams). While Abercrombie is – Plaintiffs submit – dead wrong (*see* pages 12-17, below), the issue at this first stage is not the legality of Abercrombie's common overtime policy – i.e., the merits of Plaintiffs' claim as to the asserted illegality – but rather whether Plaintiffs have made a "modest factual showing" that they are similarly situated to other AMs. *Hertz*, 624 F.3d at 554-55. As demonstrated below, Plaintiffs have made this modest showing.

### C. Abercrombie's Common FWW Policy

During all times relevant to this lawsuit, Abercrombie has maintained a common FWW policy for all AMs. *See* pages 1-2 *supra*. Abercrombie calculated overtime in the same manner for all individuals subjected to its FWW policy, as is demonstrated by this example in its policy:

**Example 1:**
Base Salary $480          $480 divided by 40 = $12.00 regular hourly rate
Hours Worked 45          $12.00 divided by 2 = $6.00 supplemental rate
                                      $6.00 supplemental rate x 5 overtime hours worked = $30.00
                                      supplemental pay
                                      $480 base salary + $30.00 supplemental = $510 total pay

**Example 2:**
Base Salary $480          $480 divided by 40 = $12.00 regular hourly rate
Hours Worked 50          $12.00 divided by 2 = $6.00 supplemental rate
                                      $6.00 supplemental rate x 10 overtime hours worked = $60.00
                                      supplemental pay
                                      $480 base salary + $60.00 supplemental = $540 total pay

Exhibit A at AF00032250. And relevant here, as set forth above, Abercrombie's policy also provided – and today continues to provide – that its employees who worked on holidays get paid overtime for doing so at a regular rate of pay, and hence are paid what is referred to as an

hours-based bonus.  *See, e.g., Wills v. RadioShack Corp.*, 2013 U.S. Dist. LEXIS 159727 at *46

(S.D.N.Y. Nov. 7, 2013) (Englemayer, J.) (holding such payments to be impermissible).

## II.   ARGUMENT

### A.   Conditional Certification Under the FLSA

Plaintiff brings this collective action on behalf of herself and similarly situated AMs

pursuant to FLSA Section 16(b), which allows private civil actions to be maintained "by any one

or more employees for and in behalf of himself or themselves and other employees similarly

situated."  29 U.S.C. § 216(b).  An FLSA collective action "is a 'unique species of group

litigation' in which each plaintiff 'desiring to be included in the litigation must "opt in" to the

suit by filing a written consent with the court.'"  *Kenyatta-Bean v. Hous. Auth. of New Orleans*,

2005 U.S. Dist. LEXIS 36667, at *17-18 (E.D. La. Nov. 18, 2005) (quoting Arthur R. Miller &

Mary K. Kane, *Federal Practice and Procedure* § 1807, 468-69 (3d ed. 2005)); *see also Aquilino*

*v. Home Depot, Inc.*, 2006 U.S. Dist. LEXIS 66084, at *3 (D.N.J. Sept. 6, 2006) ("FLSA allows

one or more employees to pursue an action in a representative capacity for other employees

similarly situated.") (internal quotation marks omitted).

The "collective action" mechanism provides plaintiffs with "the advantage of lower

individual costs to vindicate rights by the pooling of resources."  *Hoffman-La Roche Inc. v.*

*Sperling*, 493 U.S. 165, 170 (1989).  To effectuate this end, courts "conditionally certify" the §

216(b) class and authorizes the sending of notice to employees, thereby furthering the FLSA's

"broad remedial purpose," *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir.

1978); *accord Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 262-63 (S.D.N.Y. 1997), and is

justified by the court's "managerial responsibility to oversee the joinder of additional parties to

assure that the task is accomplished in an efficient and proper way."  *Hoffman-LaRoche*, 493

U.S. at 170-71.  As observed by the Supreme Court, the benefits of a § 216(b) collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Id.* at 170; *accord, e.g., Rahman v. Cargill Meat Solutions Corp*., 2006 U.S. Dist. LEXIS 57333, at *3-4 (M.D. Pa. Aug. 14, 2006).  This is particularly because the FLSA statute of limitations continues to run until an individual plaintiff opts in and "early certification and notice are favored in order to protect plaintiffs' rights."  *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451, at *30 (E.D.N.Y. Apr. 9, 2010).

In *Hertz*, the Second Circuit approved the two-step process for addressing certification of a collective action that the Circuit's district courts, as well as others, have utilized.  624 F.3d at 554-55 (citing *Morgan v. Family Dollar Stores, Inc.,* 551 F.3d 1233, 1258-62 (11th Cir. 2008)); *see also Damassia v. Duane Reade, Inc.,* 2006 U.S. Dist. LEXIS 73090, at *3 (S.D.N.Y. Oct. 4, 2006) (Lynch, J.); *Hoffman v. Sbarro, Inc.,* 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.).  "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Hertz*, 624 F.3d at 555 (citations omitted).  The first-step, the standard for authorizing FLSA notice, is minimal.  "[P]laintiffs must only satisfy [a] fairly lenient standard and the court typically grants conditional certification."  *Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at *5 (E.D.N.Y. July 19, 2010) (Townes, *J.*) (citation omitted); *see also, e.g., Cunningham v. Elec. Data Sys. Corp.*, 754 F. Supp. 2d 638, 643-44 (S.D.N.Y. Dec. 14, 2010); *Ibea v. Rite Aid Corp.*, 2011 U.S. Dist. LEXIS 144652, at *3-4 (S.D.N.Y. Dec. 14, 2011), *aff'd by* 2012 U.S. Dist. LEXIS 4682 (S.D.N.Y. Jan. 9, 2012).  *Hertz* explained that:

> In a FLSA exemption case [as here], plaintiffs accomplish this by making some showing that there are other employees who are similarly situated with respect to their job requirements and with regard to their pay provisions, on which the criteria for many FLSA exemptions are based, who are classified as exempt pursuant to a common policy or scheme.

624 F.3d at 555 (internal citations and quotations omitted).

As the Second Circuit held, this is a "modest factual showing" and remains "a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *Id.* (citations omitted); *see also Pippins v. KPMG, LLP*, 2012 U.S. Dist. LEXIS 949, at *13-19 (S.D.N.Y. Jan. 3, 2012); *Sbarro*, 982 F. Supp. at 261. "Because the putative 'similarly situated' plaintiffs have not yet been joined, and may not even be known, the certification is viewed as preliminary and subject to revisitation by the court." *Gortat v. Capala Bros.*, 2010 U.S. Dist. LEXIS 35451, at *31 (E.D.N.Y. Apr. 9, 2010) (Glasser, J.).

**B.    Plaintiffs' Burden Is Minimal at the Notice Stage.**

The standard for the first step – which is where we are in this case – authorizing notice is minimal under 29 U.S.C. § 216(b). "In order to prevail, plaintiffs must only satisfy this 'fairly lenient standard' and the court 'typically grants conditional certification.'" *Ravenell v. Avis Budget Car Rental, LLC*, 2010 U.S. Dist. LEXIS 72563, at *5 (E.D.N.Y. July 19, 2010) (citing *Malloy v. Richard Fleischman & Assocs. Inc.*, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)); *Cunningham v. Elec. Data Sys. Corp.*, 2010 U.S. Dist. LEXIS 132127, at *14-15 (S.D.N.Y. Dec. 14, 2010); *Gortat*, 2010 U.S. Dist. LEXIS 35451, at *30. "The burden on plaintiff is not a stringent one, and the Court need only reach a preliminary determination that plaintiffs are similarly situated." *Hoffman*, 982 F. Supp. at 261.

The Second Circuit has established the standard at this stage to be that of a "modest factual showing" and remains "a low standard of proof because the purpose of this first stage is

merely to determine whether similarly situated plaintiffs do in fact exist." *Hertz*, 624 F.3d at 555

(internal citations and quotations omitted); *see Sbarro*, 982 F. Supp. at 261.  "At the second

stage, the district court will, on a fuller record, determine whether a so-called collective action

may go forward by determining whether the plaintiffs who have opted in are in fact similarly

situated to the named plaintiffs." *Hertz*, 624 F.3d at 555; *accord Gortat*, 2010 U.S. Dist. LEXIS

35451, at *31 ("[b]ecause the putative 'similarly situated' plaintiffs have not yet been joined, and

may not even be known, the certification is viewed as preliminary and subject to revisitation by

the court.").

Until the members of the collective are known, the lenient preliminary certification

standard is applicable and it is at the second stage that a stricter standard may apply.  *Cohen v.*

*Gerson Lehrman Grp., Inc.*, 2010 U.S. Dist. LEXIS 1666, at *22 (S.D.N.Y. Jan. 7, 2010)

("After discovery, typically on the defendant's motion for decertification, courts engage in the

second phase of analysis.  At that point, the court determines on a full record . . . whether the

additional plaintiffs are, in fact, similarly situated.") (citations omitted); *Ravenell*, 2010 U.S.

Dist. LEXIS 72563, at *10 ("[T]he more exacting standard does not apply until after discovery is

complete and it can be determined whether the class of plaintiffs, including those who have

opted in, should proceed to trial as a collective action.").  "The action may be 'de-certified' [after

the second stage] if the record reveals that they are not, and the opt-in plaintiffs' claims may be

dismissed without prejudice." *Id*. (citing *Family Dollar*, 551 F.3d at 1261; *Hipp v. Liberty Nat'l*

*Life Ins. Co*., 252 F.3d 1208, 1218 (11th Cir. 2001)).  Judge Glasser of this Court has trenchantly

explained why the standard at the first stage is low:

> Because the statute of limitations for FLSA claims continues to run for each
> individual plaintiff until he or she opts in, *see* 29 U.S.C. § 216(b), early certification
> and notice are favored in order to protect plaintiffs' rights.  Thus, only a minimal
> evidentiary burden is imposed in order to satisfy the "similarly situated"

requirement.... The heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated.  It would not sensibly serve the purposes of a two-step scheme to impose on plaintiffs a heightened burden of proving that as-yet-unknown plaintiffs are similarly situated.

*Gortat*, 2010 U.S. Dist. LEXIS 35451, at *30, *35.

The burden of demonstrating that potential plaintiffs are similarly situated is therefore low at the notice stage.  Indeed, though the plaintiff bears the burden of producing a "modest factual showing that the plaintiff and the potential plaintiffs were victims of a common policy or plan violating FLSA, it may be appropriate in some cases to find plaintiffs and potential plaintiffs similarly situated based simply on plaintiffs' 'substantial allegations' that they and potential plaintiffs were common victims of a FLSA violation, particularly where defendants have admitted that the actions challenged by plaintiffs reflect a company-wide policy." *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (internal quotation marks omitted); *Sexton v. Franklin First Fin., Ltd.*, 2009 U.S. Dist. LEXIS 50526, at *14-15 (E.D.N.Y. June 16, 2009); *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *3.

The law is clear that all that is required to be shown is a corporate policy of not paying overtime at a rate of time and one-half of the employees' regular rate of pay for all hours worked over 40 in a week of as part of what now-Circuit Judge Lynch has termed a "uniform business practice."  *Damassia*, 2006 U.S. Dist. LEXIS 73090, at *18.  Or, as now-Supreme Court Justice Sotomayor similarly wrote, all an employee need make is "a modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together were victims of a common policy or plan that violated the law."  *Realite v. Ark Rests. Corp.*, 7 F. Supp. 2d 303, 306 (S.D.N.Y. 1998). "At the preliminary notice stage, 'plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme.'"

*Realite*, 7 F. Supp. 2d at 306 (quoting *Krueger v. New York Tel. Co.*, 1993 U.S. Dist. LEXIS 9988 (S.D.N.Y. July 21, 1993)); *accord Hertz*, 624 F.3d at 555; *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 92 (E.D.N.Y. Jan. 15, 2010).

Courts do not weigh the merits of the claims or defenses in determining whether potential opt-in plaintiffs are similarly situated. *Laroque v. Domino's Pizza, LLC,* 557 F. Supp. 2d 346, 354 (E.D.N.Y. 2008) ("the focus is not on whether there has been a violation of the law, but on whether the proposed plaintiffs are 'similarly situated' with respect to their allegations . . . ."); *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005); *Gjurovich*, 282 F. Supp. 2d at 105 ("[o]nce the [p]laintiff makes a colorable claim for relief, the only inquiry necessary is whether the potential plaintiffs to be notified are similarly situated to the named plaintiff.") (*citing Sbarro*, 982 F. Supp. at 262); *Lloyd v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist LEXIS 129102, at *12 (S.D.N.Y. Sept. 9, 2013) ("Defendant's argument that conditional certification should be denied because FAs are correctly classified as exempt is not appropriately considered at this conditional stage of the certification inquiry.") (quoting *Pippins v. KPMG LLP*, 2012 U.S. Dist LEXIS 949, at *3 (S.D.N.Y. Jan. 3, 2012) ("Exemptions 'are affirmative defenses to overtime pay claims, and [an employer] bears the burden of proving that a plaintiff has been properly classified as an exempt employee.'"); *Davis v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 86577, at *32 (S.D.N.Y. Oct. 22, 2008) (rejecting the exact argument Abercrombie has previously made here – that conditional certification should be denied because AMs are exempt – stating that "[t]his argument is misdirected to the underlying merits of this action."); *Hinterberger v. Catholic Health Sys.*, 2009 U.S. Dist. LEXIS 97944, at *30 (W.D.N.Y. Oct. 20, 2009 ("It is well settled that [the existence of certain individuals claims or defenses] does not

require an individualized inquiry at this preliminary stage") (citing *Sexton v. Franklin First Fin., Ltd.,*, 2009 U.S. Dist. LEXIS 50526, at *28-29) (E.D.N.Y. June 16, 2009).

Once the court determines that potential members are similarly situated, it "conditionally certifies" the collective action and Court-authorized notice is sent to potential collective-action class members, who may elect to "opt-in" under Section 216(b) by filing written consents. The action then proceeds as a collective action throughout the merits discovery process. *See Masson v. Ecolab, Inc.,* 2005 U.S. Dist. LEXIS 18022, at *39 (S.D.N.Y. Aug. 17, 2005). At the end of the process, a defendant can move to decertify part or all of the collective action and that is why, unlike a Rule 23 class which is certified for all trial purposes, an FLSA collective action is considered a "conditional" certification prior to trial. *See Realite*, 7 F. Supp. 2d at 308 ("I am not holding at this time that all members of the proposed class who will be sent notices are, in fact, similarly situated . . . . I may later decertify the class, or divide the class into subgroups . . . . However, at this early juncture . . . principles of efficiency and judicial economy militate in favor of maintaining this action as a collective one, and waiting to see what facts bear out.") (Sotomayor, J.).

## C.    Fluctuating Workweek Collective Action Claims Are Routinely Certified.

This is the archetype of a case where collective certification is appropriate. As described above, Plaintiffs' operative claimed violation of the FLSA is quite simple. Abercrombie paid the putative class members not time and a half overtime, but rather half-time overtime. It did so purportedly pursuant to 29 C.F.R. § 778.114, commonly referred to as FWW. However, Abercrombie violated FWW by paying the AMs premiums, such as holiday pay. According to every case that has directly addressed this issue and, indeed, explicitly according to the United States Department of Labor ("DOL") in a Final Rule determination that was issued in April

2011, the payment of additional "non-overtime" hourly-based premiums (such as holiday pay) destroys an employer's ability to try to take advantage of the FWW.  Accordingly, an employer cannot pay such "premiums" and also only pay half-time – instead of time and a half – overtime.

Indeed, in 2008, the DOL considered changing § 778.114 to permit, expressly, employers to pay hours-based bonuses under the FWW.   Notice of Proposed Rulemaking, 73 Fed. Reg. 43654 (Jul. 28, 2008).  After full rulemaking (as to this regulation that the DOL itself promulgated), it reached its April 2011 conclusion and decided to not change the rule and thus not permit the payment of hours-based bonuses. *See Wills*, 2013 U.S. Dist. LEXIS 159727 at *9-11, *34-39 (comprehensive analysis of the 2011 Final Rule to conclude that the DOL did permit performance-based, but not hours-based, bonuses with the FWW).

The reason the DOL so concluded is that to take advantage of the FWW, an employer must pay a "fixed salary" to the employees. 29 C.F.R. § 778.114(a). "Non-overtime" hours-based premiums necessarily cause the salaries to vary based upon time worked, and while "the payment of bonus and premium payments can be beneficial for employees in many other contexts, we have concluded that unless such payments are overtime premiums, they are incompatible with the fluctuating workweek method of computing overtime under section 778.114." Department of Labor Final Rule, 76 Fed. Reg. 18,832, 18,853 (Apr. 5, 2011) ("Final Rule").[4]  Courts agree.  Last year, for instance, Judge Englemayor reviewed the regulation and

---

[4] There is compelling logic behind the Department's conclusion:

> As several commenters noted, the proposed regulation could have had the unintended effect of permitting employers to pay a greatly reduced fixed salary and shift a large portion of employees' compensation into bonus and premium payments, potentially resulting in wide disparities in employees' weekly pay depending on the particular hours worked.  It is just this type of wide disparity in weekly pay that the fluctuating workweek method was intended to avoid by requiring the payment of a fixed amount as straight time pay for all hours in the workweek, whether few or many.  The basis for allowing the

its history to conclude that the payment of hours-based additional pay (precisely what

Abercrombie has done and continues to do) is "incompatible" with the FWW, which is what the

DOL reaffirmed in 2011.  In a comprehensive decision he wrote:

> Before the DOL issued its Final Ruling in 2011, almost every court to have addressed the issue had held that paying an employee hours-based, or time-based, bonuses and premiums—such as extra pay for **holiday**, weekend, or night work—offended § 778.114's requirement of a "fixed weekly salary."  [Citing numerous cases.]
> ….
>
> As these cases generally recognize, when an employer pays its employees additional money for hours worked during weekends, **holidays**, or nights, the employees who work such premium hours will earn more than those who work normal, non-premium hours. The employees receiving such bonuses thus cannot be said to receive a "fixed salary" *regardless of hours worked*; on the contrary, employees who worked "premium" hours would receive more pay.
>
> …
>
> Accordingly, the DOL's Final Ruling, closely read, reveals an intention to leave in place the status quo, not to disturb it, as the rule proposed in 2008 would have done. Despite its admittedly sweeping language in points, the Final Ruling is not properly read to have moved the law in the opposite direction from that contemplated in the proposed rule, so as to tacitly change § 778.114 to preclude the FWW method in cases of performance-based bonuses.  The Court, therefore, reads the Final Ruling as leaving in place the distinction between hours-based bonuses, which are incompatible with the FWW requirement of a "fixed weekly salary," and performance-based bonuses, which are not.

---

half-time overtime premium computation under the fluctuating workweek method is the mutual understanding between the employer and the employee regarding payment of a fixed amount as straight time pay for whatever hours are worked each workweek, regardless of their number.  While the example provided in the NPRM of nightshift premiums resulted in a relatively modest change in the employee's straight time pay, the Department now believes that the proposed regulation would have been inconsistent with the requirement of a fixed salary payment set forth by the Supreme Court in *Overnight Motor Transport v. Missel*.  Moreover, on closer examination, the Department is persuaded that the courts have not been unduly challenged in applying the current regulation to additional bonus and premium payments.

Final Rule, 76 Fed. Reg. at 18,850.

*Wills*, 2013 U.S. Dist. LEXIS 159727 at *25-27, 46.[5]

Likewise, also a year ago, Judge Cavanaugh in the District of New Jersey addressed the same situation with another retail chain store and held that because of the manner in which the chain paid holiday pay in addition to the regular fixed salary, the "Court is convinced that . . . [Plaintiffs] cannot receive the fixed salary required to apply the FWW." *Gibbons v. Office Depot, Inc.*, 2013 U.S. Dist. LEXIS 25169, at *6-7 (D.N.J. Feb. 20, 2013); *accord also Brumley v. Camin Cargo Control, Inc.*, 2010 U.S. Dist. LEXIS 144198, at *17 (D.N.J. Apr. 20, 2010) (holiday pay "results in the absence of the 'fixed salary' required by the regulation.").

Notwithstanding the DOL's unequivocal statement of the law affirmed after full notice and rulemaking and notwithstanding the concurrence of every court that has addressed hourly-based bonuses, Abercrombie has paid non-overtime hourly-based premiums to assistant managers at the same time that it also limited the overtime to FWW half-time.  Thus, although not presently before the Court, on the merits, Abercrombie's Supplemental Pay policy fails to comply with the FWW.

Inasmuch as FWW claims involve the common question of whether the uniform corporate policy complied with the law, courts routinely certify cases involving a common fluctuating workweek policy.  *See, e.g., Elliot*, 2011 U.S. Dist. LEXIS 136503; *Bredbenner v. Liberty Travel, Inc.*, 2009 U.S. Dist. LEXIS 67122 (D.N.J. July 31, 2009); *Ott v. Publix Super Mkts., Inc.*, 2013 U.S. Dist. LEXIS 63581 (M.D. Tenn. May 3, 2013); *Ayers*, 1:03-cv-9078 (S.D.N.Y. Oct. 14, 2004) (Order Dkt. No.. 24); *Kiefer v. Moran Foods, Inc.*, 3:12-cv-00756 (D. Conn. Mar. 12, 2013) (Order Dkt. No. 183); *Smith v. Lowe's Cos.*, 2005 U.S. Dist. LEXIS 9763

---

[5] Bizarrely, Abercrombie has cited *Wills* during this litigation to claim that it supports its position (ECF Doc. 46 at 3), which is plainly does not; as just cited it squarely concludes that hours-based bonuses are not compatible with the FWW.  *See also* pages 18-19, below (addressing Abercrombie's position based upon prior case involving its policy).

(S.D. Ohio May 11, 2005); *Sealy v. Keiser Sch. Inc.*, 2011 U.S. Dist. LEXIS 152369 (S.D. Fla. Nov. 8, 2011); *see also Gibbons, supra*, 2:12-cv-02992 (D.N.J. Aug. 28, 2013) (Order Dkt. No. 117) (defendant consented to conditional certification); *Brumley, supra*, 2:08-cv-01798 (D.N.J. Sept. 15, 2008) (Order Dkt. No. 58) (defendant consented to conditional certification).  The *Elliot* court explained why FWW claims are conditionally certified:

> Plaintiff has sufficiently plead that he and other putative class members were subjected to the same overtime compensation scheme, and base want of relief on that commonality.  Plaintiff has provided sufficient evidence for this Court to conclude that a class of Inspectors who worked for Defendant within the last three years and were subjected to a common scheme of allegedly unlawful overtime compensation payment.
>
> Plaintiff has met his burden of setting forth a 'factual nexus' between his position and that of other members of the putative class.  Moreover, Plaintiff has shown that putative class members were subjected to Defendant's common policy for calculating overtime compensation.  This Court finds Defendant's strongest argument unavailing because variance in calculation of damages is not relevant to determining whether common issues of liability are present at this stage of litigation.  Despite the fact that amount and rate of pay varies between Inspectors, all of those seeking to join in this action were subject to the same policy.  Inasmuch, Plaintiff has made a proper showing, sufficient for granting collective action certification at this stage.

2011 U.S. Dist. LEXIS 136503, at *10-11.

Here, Plaintiffs' evidence is well stronger than what was presented in *Elliot* and the other cases above because it comes from Defendant's own policies.  As discussed above at pages 1-2, Defendant's FWW policy applied uniformly to all AMs outside of California, Alaska and New Mexico.  Defendants also maintained a common policy for calculating overtime for all of these employees.  Therefore, conditional certification is appropriate so that these employees can receive prompt notice of this action and to prevent further erosion of their statutes of limitation.

**D.     Abercrombie's Arguments Against Conditional Certification Are Unavailing.**

Abercrombie has previously made the following three arguments against conditional certification: 1) the case is "moot" due to Abercrombie's previous Rule 68 offers of judgment;

2) Plaintiffs have not identified a "single common policy <u>that violates the FLSA</u>;" and

3) "because some or all of the [AMs] are exempt from overtime . . . determining whether a particular manager is exempt from overtime would require an individual analysis."  ECF. Doc. 35.  The first of these three issues is the subject of Abercrombie's motion to dismiss the case, which is being presently briefed and Plaintiffs' refutation of Abercrombie's arguments in that regard will not be repeated here.  This is aside from the fact that, as Abercrombie well knows, a Rule 68 defense does not defeat conditional certification; indeed, it made and lost this exact same argument in *Davis v. Abercrombie & Fitch Co.*, 2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 23, 2008).  As shown below, the second and third contentions – both variants on a "merits" defense – are no impediment to conditional certification and notice.

### 1.    Abercrombie Improperly Urges Merits-Based Arguments.

Abercrombie's second argument against conditional certification – that its common FWW policy does not **<u>violate</u>** the FLSA – is a merits argument that is improper in this first stage (*see* pages 8-12 *supra*), and has been soundly rejected by this Court and others.  Courts in this Circuit have confirmed this repeatedly, leaving no room for dispute:

> In opposing court-authorized notice, defendant dedicates a substantial portion of its briefs to the misplaced argument that plaintiffs' claims fail on the merits . . . .  [C]ourts need not resolve the merits in order to find plaintiffs and potential opt-in plaintiffs similarly situated for purposes of authorizing notice.

*Damassia*, 2006 U.S. Dist. LEXIS 73090, at *15; *Jason v. Falcon Data Com, Inc.*, 2011 U.S. Dist. LEXIS 77352, at *16 (E.D.N.Y. July 18, 2011) (defendants' argument that the common policy did not violate the law is ultimately a merits argument and is unpersuasive at first-stage); *Laroque*, 557 F. Supp. 2d at 354 (same); *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *13-15 (same); *see also, e.g., Morgan*, 551 F.3d 1233, 1258-62 (cited at *Myers*, 624 F.3d at 555) (same); *Hoffman v. Sbarro, Inc*, 982 F. Supp. 249, 261 (cited at *Myers*, 624 F.3d at 555) (Sotomayor, J.)

(same).  The established case law directly contradicts Abercrombie's assertion that Plaintiffs need to prove the company had a policy *qua* policy that itself violated the law.  For example, in *Stevens v. HMSHost Corp.*, Judge Glasser explained: "At this preliminary stage, the focus of the inquiry is not on whether there has been an actual violation of law, but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated."  2012 U.S. Dist. LEXIS 146150, at *6-7 (E.D.N.Y. Oct. 10, 2012) (quoting *Jacob v. Duane Reade, Inc.,* 2012 U.S. Dist. LEXIS 11053, at *4 (S.D.N.Y. Jan. 27, 2012)); *accord Zaniewski v. PRRC Inc*., 848 F. Supp. 2d 213, 229 (D. Conn. 2012) (same).  The question of whether Abercrombie's common FWW policy actually violated the FLSA "is properly addressed at the second stage after discovery."  *Stevens*, 2012 U.S. Dist. LEXIS 146150, at *7.

Notwithstanding the above, Abercrombie's parallel merits assertion that the Sixth Circuit decided that its pay practice complies with the law (*see* Dkt. No. 35 at 1, citing *Mitchell v. Abercrombie & Fitch Co.*, 225 Fed. Appx. 362 (6th Cir. 2007)) is also wrong.  At issue in that case *were not the claims presented here*.[6]  As set out above, Abercrombie paid "non-overtime" premiums (such as holiday pay) to its Assistant Store Managers, and this pay destroys an employer's ability to try to take advantage of the fluctuating workweek.  *See* pages 12-17 *supra*.  The *Mitchell* case *did not address* this issue at all.  Indeed, that case pre-dates the United States DOL's proposed rule change that recognized that payment of such premiums was impermissible (and that proposed changing the regulation) and, also, the DOL's Final Rule rejecting Abercrombie's method of paying non-overtime premiums.  *See* pages 13-15 *supra*.  This is all in

---

[6] *See Mitchell v. Abercrombie & Fitch Co.*, 428 F. Supp. 2d 725, 736 (S.D. Ohio 2006) (plaintiff claimed that "docking" violated the fixed salary requirement, not the non-overtime premium payments here), *aff'd* 225 Fed. Appx. 362.

addition to the fact that every case that has addressed this situation has rejected Abercrombie's

position.  *See* pages 12-15 *supra*.

### 2.    Abercrombie's Argument That AMs Are Exempt from Overtime Is Contradictory and Premature.

In a last ditch effort to escape conditional certification, Abercrombie finally argued in its

pre-conference motion letter, in contradiction to its own current policy, that despite its previous

and current "blanket treatment of all [AMs] as non-exempt," the Court should not grant

conditional certification because "some or all of Defendant's [AMs] are exempt from overtime,"

and such a determination would require an individualized analysis.[7]  ECF Doc. 35 at 3.  In

essence, this is an affirmative defense of Abercrombie's (which, as noted, is not addressed at this

stage, *see* page 17-18, *supra*) and is likewise nothing more than a variation of the merits

argument – namely*,* arguing on the merits that individuals were exempt from overtime) and it is

the very argument that has been soundly rejected in case after case in direct misclassification

cases (*i.e.*, where an employee is classified as exempt from overtime by an employer as opposed

to this "reverse misclassification" case where an employee was classified as non-exempt and

paid overtime but the employer now claims that its classification erred and that the person was

not entitled to overtime).  Just to cite one example, Judge Glasser addressed the heart of this

argument in *Stevens*, where the defendants argued that "conditional certification should be

denied because the 'determination of exempt status will require a fact-intensive inquiry into the

duties performed by each individual employee.'"  *Stevens*, 2012 U.S. Dist. LEXIS 146150,

at *10.  Quoting *Hertz*, Judge Glasser found that "a fact-intensive inquiry is inappropriate at the

notice stage, as Plaintiffs are seeking only conditional certification.  The Defendant[s] will have

---

[7] Abercrombie cited only one case to the Court in support of its argument:  *Gardner v. W. Beef Props.*, 2013 U.S. Dist. LEXIS 56511 (E.D.N.Y. Mar. 25, 2013).  However, *Gardner* is entirely inapposite as it was before the Court on a second stage motion to de-certify a class that had previously been conditionally certified.  *Id.* at *2.

an opportunity to argue that individual inquiries predominate over common issues, based on

discovery, at the second phase." *Id.* at *11 (citing *Zaniewski*, 848 F. Supp. 2d at 220-21; *Salomon*

*v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 564-65 (S.D.N.Y. 2012)).  Likewise, in *Harper v.*

*GEICO*, 09-cv-2254 (LDW) (ARL), Judge Lindsay, also explained that such a contention is a

second-stage issue, and that "[a]fter discovery is complete, the court can then determine whether

the opt-in plaintiffs are 'in-fact similarly situated to the named plaintiff,' and, if appropriate, the

action can be de-certified."  Order of June 14, 2011 (Dkt. No. 46) at 6, *aff'd*, Memorandum and

Order of October 10, 2013 (Dkt. No. 58) (Wexler, J.).  Other such cases are literally legion.[8]  *See*

*also Ott v. Publix Super Mkts., Inc*., 2013 U.S. Dist. LEXIS 63581, at *6 (M.D. Tenn. May 3,

2013) (certifying FWW case over defendant's reverse misclassification defense, holding

---

[8] Just some of the decisions where the courts in the Second Circuit have rejected the individualized inquiry/classification argument have included:  *Alli v. Boston Market*, 2011 U.S. Dist. LEXIS 101530 (D. Conn. Sept. 8, 2011);*Alonso v. Uncle Jack's Steakhouse, Inc.*, 648 F. Supp. 2d 484  (S.D.N.Y. 2009); *Aros v. United Rentals, Inc.*, 269 F.R.D. 176 (D. Conn. 2010); *Chowdhury v. Duane Reade, Inc.,* 2007 U.S. Dist. LEXIS 73853  (S.D.N.Y. Oct. 2, 2007); *Cunningham v. Elec. Data Sys. Corp*., 754 F. Supp. 2d 638 (S.D.N.Y. 2010); *Damassia v. Duane Reade, Inc.*, 2006 U.S. Dist. LEXIS 73090 (S.D.N.Y. Oct. 5, 2006); *Ferreira v. Modell's Sporting Goods, Inc.,* 2012 U.S. Dist. LEXIS 100820 (S.D.N.Y. July 16, 2012); *Gortat v. Capala Brothers, Inc.*, 2010 U.S. Dist. LEXIS 35451 (E.D.N.Y. Apr. 9, 2010); *Guttentag v. Ruby Tuesday Inc*., 2013 U.S. Dist. LEXIS 82350 (S.D.N.Y. June 11, 2013); *Hinterberger v. Catholic Health System*, 2009 U.S. Dist. LEXIS 97944 (W.D.N.Y. Oct. 20, 2009); *Hoffman v. Sbarro, Inc*., 982 F. Supp. 249 (S.D.N.Y. 1997); *Ibea v. Rite Aid Corp*., 2011 U.S. Dist. LEXIS 144652 (S.D.N.Y. Dec. 14, 2011); *In re Deloitte & Touche Overtime Litig*., 2011 U.S. Dist. LEXIS 144977 (S.D.N.Y. Dec. 16, 2011); *Indergit v. Rite Aid Corp.*, 2010 U.S. Dist. LEXIS 60202 (S.D.N.Y. June 15, 2010); *Parks v. Dick's Sporting Goods, Inc.*, 2007 U.S. Dist. LEXIS 2094912 (W.D.N.Y. Mar. 21, 2007); *Ravenell v. Avis Budget Car Rental , LLC*, 2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010); *Rubery v. Buth-Na-Bodhaige, Inc.,* 569 F. Supp. 2d 334 (W.D.N.Y. 2008); *Sexton v. Franklin First Fin., Ltd.,* 2009 U.S. Dist. LEXIS 50526 (E.D.N.Y. June 16, 2009); *Winfield v. Citibank, N.A.*, 2012 U.S. Dist. LEXIS 16449 (S.D.N.Y. Jan. 27, 2012); *Zaniewski v. PRRC Inc*., 848 F. Supp. 2d 213 (D. Conn. 2012).  Indeed, although beyond the scope of the present motion, Rule 23 class exemption class claims can (and often are) certified over the "individualized" job duties contention.  *Damassia v. Duane Reade, Inc.,* 250 F.R.D. 152 (S.D.N.Y. 2008); *Jacob v. Duane Reade, Inc.*, 2012 U.S. Dist. LEXIS 11053 (S.D.N.Y. Jan. 27, 2012); *Youngblood v. Family Dollar Stores, Inc*., 2011 U.S. Dist. LEXIS 115389 (S.D.N.Y. Oct. 4, 2011).

"conditional certification should be denied based on Defendant's argument about possible exemptions when the company itself has allegedly treated the employees as non-exempt.").

In short, aside from the merits point that Abercrombie's argument will ultimately be shown to have no validity because Abercrombie cannot, belatedly, claim it misclassified its own employees as non-exempt when they were really (supposedly) exempt, Abercrombie's "individualized inquiry" claim does not defeat conditional certification.  Again, Abercrombie is well aware that this argument is premature at the notice stage as it made, and lost, this exact argument in *Davis*.  2008 U.S. Dist. LEXIS, at * 32 (dismissing Abercrombie's "reverse misclassification defense" argument against conditional certification as premature in the first stage); *accord Ott*, 2013 U.S. Dist. LEXIS 63581 at *4.  Accordingly, the appropriate time for the Court to address its AM's belatedly discovered exempt status affirmative defense is at the second stage of this litigation.

### E.    The Court Should Compel Abercrombie to Produce Contact Information

In the event that the Court conditionally certifies this action as a collective action, Plaintiffs will meet and confer with Abercrombie on the form of notice to be sent and how it is disseminated.  Accordingly, in order for Plaintiffs to provide similarly situated AMs with accurate and timely notice of the action as contemplated by the law and routinely done by courts, Plaintiffs request that Abercrombie be ordered to produce the following within 14 days of the Court's Order:

> A list, in electronic format, of all persons employed by Defendant as Assistant Managers since May 10, 2010 in the United States of America outside of Alaska, California and New Mexico who were paid by Defendant's Supplemental Pay Method.  This list should include:  names, addresses, telephone numbers, dates of employment, locations of employment, and work and personal e-mail addresses.

*See*, *e.g.*, *Hoffman-LaRoche*, 493 U.S. at 170; *Bouder v. Prudential Fin., Inc.*, 2008 U.S. Dist. LEXIS 25103, at *16; *Goodman v. Burlington Coat Factory*, 1:11-cv-4395 (Order Dkt. No. 119) (D.N.J. Dec. 3, 2012); *Stillman v. Staples, Inc.*, 2008 U.S. Dist. LEXIS 32853, at *34-36 (D.N.J. Apr. 22, 2008); *Bell v. Citizen Fin. Grp., Inc.,*, 2010 U.S. Dist. LEXIS 91172, at *9; *In re Enterprise*, 2010 U.S. Dist. LEXIS 82961, at *82-83; *Amador v. Morgan Stanley*, 11-cv-4326 (Order Dkt. No. 79) (S.D.N.Y. Feb. 27, 2013) (ordering same information as sought here); *see also*, *e.g.*, *McKee v. Petsmart, Inc.*, C.A. No. l:12-cv-01117-SLR/MPT (D. Del.) (Dkt. No 79-1) (permitting consent forms to be returned by fax, scan and email or cellphone photograph); *Heitzenrater v. OfficeMax, Inc.*, et.al., Case No. 2:12-cv-900 (W.D.N.Y) (Dkt. No 83-l) (permitting consent forms to be returned by fax, scan and email or cellphone photograph); *Stallard v. Fifth Third Bank, et.al.*, Case No. 2:12-cv-1092 (W.D. Pa.) (Dkt. No 97) (permitting consent forms to be returned by fax, or scan and email); *Bland v. Calfrac Well Svcs. Corp.*, Case No. 2:12-cv-01407 (W.D. Pa.) (ECF 39-l) (providing for electronic signature and email submission of consent forms). *See* Lesser Decl. Ex. I (copies of the immediately foregoing orders).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant this Motion so that all Salaried Non-Exempt Associates employed by Defendants since May 10, 2010 in the United States of America (except for Alaska, California and New Mexico) who were paid pursuant to Defendant's Supplemental Pay method can be promptly notified of their right to participate in this lawsuit.

Dated:  June 30, 2014            Respectfully submitted,
        Rye Brook, New York

By:_____
Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:  (914) 934-9200

Silvija A. Strikis
Andrew M. Hetherington
KELLOGG, HUBER, HANSEN,
  TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
(202) 326-7900 (Tel.)
(202) 326-7999 (Fax)

Bradley L. Berger
BERGER ATTORNEY P.C.
321 Broadway
New York, New York 10007
Telephone:  (800) 529-4444

*Attorneys for Plaintiffs*