N THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------X
VERONIQUE HEPLER, individually and
on behalf of all others similarly situated,

                Plaintiffs,

      v.

ABERCROMBIE & FITCH CO., and
ABERCROMBIE & FITCH
STORES, INC.,

                Defendants.
---------------------------------------------------------X

Civil Action No. 13-cv-2815-LDW-WDW

**PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION
TO MOTION FOR CONDITIONAL CERTIFICATION
AND NOTICE PURSUANT TO 29 U.S.C. § 216(b)**

 

Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, New York 10573
Telephone: (914) 934-9200
Facsimile: (914) 934-9220

*Attorneys for Plaintiffs*

Other Counsel Listed on Signature Page

**TABLE OF CONTENTS**

I.   THE COURT DOES NOT RESOLVE FACTUAL ISSUES OR DEFENSES AT THIS STAGE .................................................................................................. 6

    A.   Plaintiffs Do Not Have To Prove Abercrombie's FWW Policy Violated the FLSA ........................................................................................... 6

    B.   Abercrombie's Post-Litigation Reverse Misclassification Defense Is No Bar to Conditional Certification ......................................................................... 7

II.  THE "MODEST FACTUAL SHOWING" STANDARD REQUIRES "MINIMAL" PROOF ............................................................................................... 10

III. PLAINTIFFS' PROPOSED NOTICE AND REQUEST FOR CONTACT INFORMATION IS APPROPRIATE AND NECESSARY ........................................... 13

CONCLUSION ............................................................................................................... 14

## **TABLE OF AUTHORITIES**

### **CASES**

*Davis v. Abercrombie & Fitch Co.*,
    2008 U.S. Dist. LEXIS 86577 (S.D.N.Y. Oct. 22, 2008) ...................................................5

*Babin v. Stantec, Inc.*,
    2010 U.S. Dist. LEXIS 88009 (E.D. Pa. Aug. 25, 2010)...................................................6

*Barry v. S.E.B. Serv. of New York, Inc.*,
    2013 U.S. Dist. LEXIS 166746 (E.D.N.Y. Nov. 22, 2013)...............................................6

*Bramble v. Walmart Stores, Inc.*,
    2011 U.S. Dist. LEXIS 39457 (E.D. Pa. April 12, 2011)..................................................6

*Cano v. Four M Food Corp.*,
    2009 U.S. Dist. LEXIS 7780 (E.D.N.Y. Feb. 3, 2009).......................................................4

*Diaz v. Electronics Boutique of Am., Inc.*,
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005)..................................................6

*Gibbons v. Office Depot, Inc.*,
    2013 U.S. Dist. LEXIS 25169 (D. N.J. Feb. 22, 2103) ................................................9, 10

*Guillen v. Marshalls of MA, Inc.*,
    841 F. Supp. 2d 797 (S.D.N.Y. 2012)................................................................................6

*Hively v. Allis-Chalmers Energy, Inc.*,
    2013 U.S. Dist. LEXIS 158415 (W.D. Pa. Nov. 5, 2013) .................................................6

*Hoffman-LaRoche, Inc. v. Sperling*,
    493 U.S. 165 (1989).......................................................................................................3, 7

*Jackson v. Bloomberg, L.P.*,
    2014 U.S. Dist. LEXIS 36282 (S.D.N.Y. Mar. 19, 2014) .................................................6

*Jason v. Falcon Data Com, Inc.*,
    2011 U.S. Dist. LEXIS 77352 (E.D.N.Y. July 18, 2011)..................................................3

*Lira v. Eagle Open Kitchen, LLC*,
    2014 U.S. Dist. LEXIS 97806 (S.D.N.Y. July 14, 2014) .................................................10

*Lloyd v. J.P. Morgan Chase & Co.*,
    2013 U.S. Dist. LEXIS 129102 (S.D.N.Y. Sept. 9, 2013).................................................6

*Mike v. Safeco Ins. Co. of Am.*,
    274 F. Supp. 2d 216 (D. Conn. 2003) ................................................................................. 6

*Myers v. Hertz Corp.*,
    624 F.3d 537 (2d Cir. 2010) ...................................................................................... 1, 6, 7

*Ott v. Publix Super Mkts., Inc.*,
    2013 U.S. Dist. LEXIS 63581 (M.D. Tenn. May 3, 2013) .................................................. 5

*Pippins v. KPMG, LLP*,
    2012 U.S. Dist. LEXIS 949 (S.D.N.Y. Jan. 3, 2012) ........................................................... 6

*Ravenell v. Avis Budget Care Rental, LLC*,
    2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) ..................................................... 4

*Sanchez v. El Rancho Sports Bar Corp.*,
    2014 U.S. Dist. LEXIS 66234 (S.D.N.Y. May 13, 2014) .................................................. 10

*Stevens v. HMSHost Corp.*,
    2012 U.S. Dist. LEXIS 146150, Pl. Br. at 16-19 ................................................................. 3

*Trinidad v. Pret A Manger (USA) Ltd.*,
    962 F. Supp. 2d 545 (S.D.N.Y. 2013) ........................................................................... 1, 10

*West v. Border Foods, Inc.*,
    2006 U.S. Dist. LEXIS 96963 (D. Minn. June 12, 2006) .................................................... 6

*Whitehorn v. Wolfgang's Steakhouse, Inc.*,
    767 F. Supp. 2d 445 (S.D.N.Y. 2011) ............................................................................... 10

*Wilson v. Anderson Perforating, Ltd.*,
    2013 U.S. Dist. LEXIS 93202 (W.D. Tex. July 3, 2013) ................................................ 5, 7

At this initial "first stage," the case law is clear that the only question to be decided on a motion to conditionally certify a collective action under the Fair Labor Standards Act ("FLSA") is whether the employees who would benefit from notice and an opportunity to join this action are "similarly situated." As set forth below and in Plaintiffs' Memorandum in Support of Motion for Conditional Certification and Notice Pursuant to 29 U.S.C. § 216(b) ("Pl. Br.") at pages 7-8 (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir. 2010) ("*Hertz*")), Plaintiffs have met this lenient burden. Faced with this Circuit's jurisprudence governing Section 216(b) certification (*see* Pl. Br. at 6-16), Defendants Abercrombie & Fitch Co.'s and Abercrombie & Fitch Stores, Inc.'s ("Abercrombie") opposition brief ("Def. Br."), is an extended disquisition on what is not—and should not be—before the Court: whether its corporate-wide fluctuating workweek ("FWW") overtime policy, as applied to its Salaried Non-Exempt Associates[1] is unlawful. As shown below (*infra* p. 8), Abercrombie's own corporate documents demonstrate that it had a uniform and consistent corporate policy of paying AMs "hours based bonuses" in the form of holiday pay.

As Plaintiffs predicted in their opening brief (at 16-21), in addition to arguing for an incorrect standard for conditional certification, i.e., that Plaintiffs need now show that Abercrombie's FWW overtime policy is unlawful, *see id*. 17-18 (explaining that merits determinations are not proper at this stage), Abercrombie spends the remainder of its brief advancing a similarly unavailing argument, reiterating that this case should be dismissed based on its attempts to "pick off" individual Plaintiffs with offers of judgment. Def. Br. at 3-4, 10-15. While such arguments are wholly irrelevant to the issue of conditional certification, Plaintiffs

---

[1] As noted in footnote 1 of Plaintiffs' opening brief (at 1), these are the terms used by Abercrombie in its policy handbook. For convenience hereinafter, rather than repeating Salaried Non-Exempt Associates (or an awkward acronym), the putative collective group will be referred to as "AMs." Exhibits to the Lesser Declaration shall be in the form of "Ex. __."

4

have fully responded to them in their opposition to Abercrombie's motion to dismiss, and will not repeat them here.  *See* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss at 7-22.

After its discussion of these irrelevant issues, Abercrombie spends an additional eight pages of its opposition advancing a "reverse misclassification" affirmative defense argument against conditional certification.  Def. Br. at 5-9, 21-23.  The crux of this argument is that even though Abercrombie classified AMs as non-exempt employees and paid them (albeit incorrectly) as non-exempt employees, Abercrombie now argues that the AMs were not entitled to overtime compensation because they should have been classified as exempt employees after all. Abercrombie focuses on alleged differences in the AMs' job duties in an effort to demonstrate that AMs are not similarly situated.  *Id*. at 5-9.  However, this post-litigation—and bluntly put, contrived—defense is merely another attempt to divert attention from the only relevant issue in this motion for conditional certification (which Defendant cannot—and has not—disputed), that all AMs are similarly situated in that they were all paid in accordance with the same pay method. Pl. Br. at 1-6.

Importantly, as well, Abercrombie's latest reverse misclassification defense is irreconcilably inconsistent with Abercrombie's contention that its FWW policy complied with the law in all respects.  But, in any event, even if this implausible and inconsistent defense were to be considered as some point in this case, it is premature at the conditional certification stage and should be disregarded for purposes of this motion.  *Id*. 19-21 (citing cases).

Finally, this case is not about, as Abercrombie contends, Plaintiffs requesting "court-supervised notice as a tool for drumming up business." Def. Br. at 25.  What it is about is vindicating employees' rights against a large corporation who operated an improper scheme to pay its employees diminished overtime wages to boost its bottom line.  And while this

5

corporation has "bought off" twenty AMs to avoid paying the remaining similarly situated AMs what it owes them, through the pooling of resources and aggregate litigation, these other AMs should be allowed to have the opportunity to obtain the overtime wages long overdue to them. Indeed, at present, the Plaintiff and four additional opt-ins have stepped forward and become party plaintiffs. At its heart, this motion is precisely what Congress intended in enacting 29 U.S.C. § 216(b) to allow employees to receive prompt notice of a FLSA collective action that affect their rights. *Hoffman-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

## I.   THE COURT DOES NOT RESOLVE FACTUAL ISSUES OR DEFENSES AT THIS STAGE

Abercrombie's opposition is a protracted argument of the merits of Plaintiffs' claim based on the (flawed) assertion that Defendants' FWW overtime policy does not violate the law and, in any event, Plaintiffs (and other similarly situated AMs) were not entitled to overtime because they should have been classified as exempt employees after all. In its brief, Defendants repeatedly ask this Court to weigh the evidence, consider factual and merits issues, and make credibility determinations (*see*, *e.g.*, Def. Br. at 5-9, 16-23), none of which should be considered at this stage and instead may become relevant, if at all, during later proceedings upon a motion for decertification. Pl. Br. at 16-21 (citing authorities).

### A.   Plaintiffs Do Not Have To Prove Abercrombie's FWW Policy Violated the FLSA

Abercrombie contends that its FWW policy does not violate the FLSA and that Plaintiffs have not proven that its policies are illegal. However, "it is irrelevant to the propriety of conditional classification that [defendant's] stated policies are not themselves illegal." *Stevens v. HMSHost Corp.,* 2012 U.S. Dist. LEXIS 146150, at *7-8 (E.D.N.Y. Oct. 10, 2012) (conditionally certifying collective class) (quotation marks omitted); Pl. Br. at 16-19 (citing authorities); *see also Jason v. Falcon Data Com, In*c., 2011 U.S. Dist. LEXIS 77352, at *16

6

(E.D.N.Y. July 18, 2011) (argument that common policy did not violate the law is a merits argument and unpersuasive at conditional certification stage); *Ravenell v. Avis Budget Care Rental, LLC*, 2010 U.S. Dist. LEXIS 72563 (E.D.N.Y. July 19, 2010) ("the issue is not on whether there has been a violation of the law but rather on whether the proposed plaintiffs are 'similarly situated' . . . with respect to their allegations . . . .") (quotation marks and citation omitted). Rather, as this Circuit's district courts recognize:

> It is not necessary for the purposes of conditional certification that the prospective class members all performed the same duties, or worked during the same time periods, or worked at the same locations as the named plaintiffs. . . . As long as they were all similarly situated with *respect to being subject to the same policy* of being denied [proper] overtime compensation, and there exists a factual nexus among the plaintiffs, conditional certification of the collective action is appropriate.

*Cano v. Four M Food Corp.*, 2009 U.S. Dist. LEXIS 7780, at *20 (E.D.N.Y. Feb. 3, 2009) (citing cases) (emphasis in original); *accord*, *e.g.*, *Ravenell*, 2010 U.S. Dist. LEXIS 72563, at *13-15 (same).

As discussed in Plaintiffs' opening brief, on the issue that matters, Plaintiffs have been able to demonstrate that Abercrombie has maintained a common FWW policy for all AMs. *See* Pls. Br. at 1-6. Thus, the Court should disregard Abercrombie's misplaced "merits" argument and grant Plaintiffs' motion for conditional certification (although, as is shown below, Abercrombie's policies do, in fact, violate the FWW's "fixed salary" requirement, *see infra* 9-10).

**B.    Abercrombie's Post-Litigation Reverse Misclassification Defense Is No Bar to Conditional Certification**

Abercrombie's purported post-litigation, ad-hoc reverse classification defense has no basis in fact or law. Abercrombie does not—and cannot—cite to a single authority that would permit an employer to claim, retroactively, and after it is sued, that an employee classified as

7

non-exempt and paid overtime under the FWW method, should have been (but wasn't) classified as exempt from overtime. In fact, ignored in its opposition, Abercrombie tried this same defense in *Davis v. Abercrombie & Fitch Co.*, and it was soundly rejected by Judge Castel, when he dismissed Abercrombie's reverse misclassification defense argument against conditional certification as premature in the first stage, and certified a collective action over such defense. 2008 U.S. Dist. *LEXIS* 86577, at *32 (S.D.N.Y. Oct. 22, 2008); *see* Pl. Br. at 11, 17, and 21. Likewise, in *Ott v. Publix Super Markets, Inc.*, Abercrombie argued against conditional certification because employees subject to its FWW policy may be exempt from overtime. 2013 U.S. Dist. LEXIS 63581, at *4 (M.D. Tenn. May 3, 2013) (*cited in* Pl. Br. at 16, 21; also ignored by Abercrombie). Without ruling on the ultimate validity of the exemption defense, the court held that it "is not persuaded that conditional certification should be denied based on Defendant's argument about possible exemptions when the company itself has allegedly treated the employees as non-exempt." *Ott*, 2013 U.S. Dist. LEXIS 63581, at *6. In *Ott*, conditional certification was granted even without any of the corporate policy materials that Plaintiffs have here—materials that show Abercrombie maintained and implemented a common, corporate-wide FWW policy as to AMs. *See id*. at *3 (citing evidence); Pl. Br. at 1-5. *Ott* is consistent with the FWW conditional certification cases set forth in Plaintiffs' opening brief (at 12-16), all of which Abercrombie ignores and which all demonstrate one thing: FWW cases are particularly well suited for conditional certification.

Even assuming, *arguendo*, that Abercrombie's affirmative defense that its classification of AMs as non-exempt was erroneous is given any credence, conditional certification of misclassification cases is the predominant rule and, ultimately, Abercrombie's assertions of

8

supposedly individualized circumstances (at 21-23) are the very kinds of factual issues that do not defeat conditional certification as shown at pages 19-21 of Plaintiffs' opening brief.

Tellingly, Abercrombie fails to dispute, distinguish, or even address the twenty plus Second Circuit cases that Plaintiffs cited where the courts rejected the same argument. Pl. Br. at 19-21. Rather than address the litany of Second Circuit cases rejecting its position, Abercrombie resorts to citing several pre-*Hertz* cases that are easily factually distinguishable, and/or are outlier cases that have been criticized by courts in this Circuit. For example, Abercrombie cites the pre-*Hertz* case of *Diaz v. Electronics Boutique of America, Inc.,* 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 17, 2005). Def. Br. at 22. In *Diaz*, however, the plaintiffs were attempting to certify a single collective consisting of both misclassification claims by exempt store managers and off-the-clock claims by non-exempt assistant store managers. *Diaz*, 2005 U.S. Dist. LEXIS 30382, at *4-7. Furthermore, this Court has recently distinguished *Diaz*, where conditional certification was based on allegations of an "unlawful company[-]wide policy" because, unlike in this case, the *Diaz* plaintiffs failed to identify any policy that applied uniformly to collective action members. *Barry v. S.E.B. Serv. of New York, Inc.*, 2013 U.S. Dist. LEXIS 166746, at *18 (E.D.N.Y. Nov. 22, 2013). Abercrombie also relies on another, out-of-circuit, pre-*Hertz,* and easily distinguishable decision, *West v. Border Foods, Inc*., 2006 U.S. Dist. LEXIS 96963 (D. Minn. June 12, 2006). *West* was an off-the-clock case where plaintiffs relied only on their own responses to interrogatories and an anonymous letter to support their allegations, rather than—as is undeniable here—a corporately derived policy. *Id*. at *11-17.[2]

---

[2] The remaining cases that Abercrombie cites in support of its argument that individualized determinations are required are equally inapposite. Thus, pre-*Hertz* case *Mike v. Safeco Insurance Co. of Am*erica, 274 F. Supp. 2d 216 (D. Conn. 2003), has been criticized by district

9

## II. THE "MODEST FACTUAL SHOWING" STANDARD REQUIRES "MINIMAL" PROOF

At this stage, Plaintiffs must only make a "modest factual showing" that requires "a low standard of proof because the purpose of this first stage is merely to determine whether similarly situated plaintiffs do in fact exist." *See* Pl. Br. at 8-12; *see also Hertz*, 624 F.3d at 555 (internal citations and quotations omitted); *Wilson v. Anderson Perforating, Ltd.*, 2013 U.S. Dist. LEXIS 93202, at *4-5 (W.D. Tex. July 3, 2013) (granting a conditional certification motion based solely on the pleadings where the employer's main defense was a merits-based contention as to the propriety of how the wages were paid). The *Wilson* court's rationale is consistent with the cases cited in Plaintiffs' opening brief (at 8-12) holding that the benefits of a Section 216(b) collective action "depend[] on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170.

Abercrombie conveniently ignores the low, first-stage standard and, instead, argue the validity of the way it paid its employees (at 16-20). Even if that issue were relevant now (which, as discussed above and in Pl. Br. at 17-19, it is not), Abercrombie's position presents a

---

courts in the Second Circuit because it improperly delved into a merits-based analysis in a first stage conditional certification proceeding. *See*, *e.g.*, *Jackson v. Bloomberg*, *L.P.*, 2014 U.S. Dist. LEXIS 36282, at *20 (S.D.N.Y. Mar. 19, 2014) (declining to follow *Mike* noting that "courts in this District refuse to undertake such an inquiry at this preliminary stage"). *Guillen v. Marshalls of MA, Inc.,* 841 F. Supp. 2d 797 (S.D.N.Y. 2012) has been explicitly rejected by other courts in the Second Circuit as inconsistent with the governing first-stage standard. *See*, *e.g.*, *Lloyd v. J.P. Morgan Chase & Co.*, 2013 U.S. Dist. LEXIS 129102 (S.D.N.Y. Sept. 9, 2013); *Pippins v. KPMG, LLP,* 2012 U.S. Dist. LEXIS 949, at *34-35 (S.D.N.Y. Jan. 3, 2012). Likewise, in *Babin v. Stantec, Inc*., 2010 U.S. Dist. LEXIS 88009 (E.D. Pa. Aug. 25, 2010), the court denied conditional certification where the putative collective spanned fifty-three separate and unique job titles and the plaintiff submitted evidence related to only two such job titles. *Babin*, 2010 U.S. Dist. LEXIS 88009, at *7-8. Finally, *Bramble v. Walmart Stores, Inc.*, 2011 U.S. Dist. LEXIS 39457 (E.D. Pa. April 12, 2011) has been criticized within its own circuit for engaging in a merits based analysis that is inappropriate at the first stage. *See*, *e.g.*, *Hively v. Allis-Chalmers Energy, Inc.*, 2013 U.S. Dist. LEXIS 158415, at *17-18 (W.D. Pa. Nov. 5, 2013).

collective-wide issue supporting conditional certification. In other words, by Abercrombie's own admission, its common FWW policy applies to all AMs and thus *supports* Plaintiffs' minimal burden at this stage. Pl. Br. at 1-6, 12-17 (citing authorities).

Moreover, although analysis of the merits of any claim is improper at this conditional certification stage, Abercrombie's allegations that Plaintiffs' "argument rests on the incorrect premise that Holiday Pay is an hours-based bonus" (at 17) is contradicted by its own documents. For example, Plaintiff Veronique Hepler's ("Hepler") earnings statements from December 16, 2012 to December 29, 2012 (attached as Ex. A) and December 31, 2012 to January 12, 2013 (attached as Ex. B), together with the punch records showing the actual hours Hepler worked for each day in those pay periods (attached as Ex. C) demonstrate that Abercrombie's holiday pay is, in fact, based on the hours AMs worked in those pay period and was not, as Abercrombie suggests, paid to AMs without regard to the hours they worked. Hepler's daily hours for the pay period from December 16, 2012 to December 29, 2012 are summarized as follows:

| Date | Hours | Date | Hours |
|---|---:|---|---:|
| 12/16 | 0.00 | 12/23 | 8.81 |
| 12/17 | 9.78 | 12/24 | 10.98 |
| 12/18 | 8.99 | 12/25 | 0.00 |
| 12/19 | 5.85 | 12/26 | 8.30 |
| 12/20 | 9.73 | 12/27 | 8.17 |
| 12/21 | 8.70 | 12/28 | 8.11 |
| 12/22 | 0.00 | 12/29 | 0.00 |
| Total | 43.05 | Total | 44.37 |

Ex. C. For this pay period, Hepler was paid her regular salary based on 80 hours at straight time; 7.41 hours of overtime at half her regular rate; and a full 8 hours of holiday pay because

11

Christmas day fell within this pay period.  Ex. A.  However, the hours-based nature of Abercrombie's holiday pay is illustrated in Hepler's very next pay period:

| Date  | Hours | Date  | Hours |
|-------|-------|-------|-------|
| 12/30 | 0.00  | 1/6   | 0     |
| 12/31 | 0.00  | 1/7   | 11.26 |
| 1/1   | 7.27  | 1/8   | 6.32  |
| 1/2   | 7.86  | 1/9   | 9.98  |
| 1/3   | 8.49  | 1/10  | 9.42  |
| 1/4   | 7.84  | 1/11  | 9.06  |
| 1/5   | 0.00  | 1/12  | 0.00  |
| Total | 31.46 | Total | 46.04 |

Ex. B.  As Exhibit B shows, Hepler was only paid for a portion of her regular salary based on 72 hours (rather than the full 80 hours) at straight time; 6.04 hours of overtime at half her regular rate; and a full 8 hours of holiday pay because New Year's day fell within this pay period. Accordingly, because Hepler worked less than a full 80 hours in the two-week pay period from December 30, 2012 to January12, 2013 (a period that contained a holiday), Abercrombie adjusted her regular salary downward so that, when combined with the holiday pay, she received only her normal salary based on 80 hours, and thus, effectively she received no holiday pay.[3] This illustrates exactly how Abercrombie's FWW pay policy violates the FLSA:  the holiday pay is directly tied to the number of hours that an AM works in the holiday pay period.  This is the same reason that Office Depot's identical pay policy was found to violate the FLSA in *Gibbons v. Office Depot, Inc.*, 2013 U.S. Dist. LEXIS 25169 (D. N.J. Feb. 22, 2103):

---

[3] Should Abercrombie wish to quibble about the fact that it actually designated eight hours of Hepler's pay as "Holiday Pay," then it clearly violated the FWW's fixed salary requirement by reducing Hepler's regular salary to a base of 72 hours rather than the normal 80 hours based on the fact that she worked less than 80 hours in that pay period.

> [T]he amount of holiday pay received by ASMs differs in accordance with the total number of hours worked within that pay period. . . . For example, ASMs who work less than forty hours receive only the fixed salary and not premium pay for holiday hours, while ASMs who works [sic] forty hours or more in the [pay period] receive the entire eight hours of holiday pay in addition to the fixed salary.

2013 U.S. Dist. 25169, at *9. Just, as in *Gibbons*, Abercrombie's hours-based premium payments violate the FWW's "fixed salary" requirement, notwithstanding Abercrombie's assertions otherwise. *See* Pl. Br. at 12-16.

### III. PLAINTIFFS' PROPOSED NOTICE AND REQUEST FOR CONTACT INFORMATION IS APPROPRIATE AND NECESSARY

Despite Abercrombie's attempt to shorten the notice period, courts—including this Court itself in, *e.g., Harper v. GEICO*, No. 09-CV-02254 (LDW)(GRB)—routinely apply the three-year notice period requested by Plaintiffs because a three-year statute and equitable tolling may be appropriate. *See Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011) ("[I]t is appropriate for notice to be sent to the larger class of prospective members, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date."); *Sanchez v. El Rancho Sports Bar Corp.*, 2014 U.S. Dist. LEXIS 66234, at *4 (S.D.N.Y. May 13, 2014) (the "more recent trend" is "to approve three-year notice periods") (citing cases); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 564 (S.D.N.Y. 2013) (approving three-year notice period for FLSA collective action); *Lira v. Eagle Open Kitchen, LLC*, 2014 U.S. Dist. LEXIS 97806, at *6-7 (S.D.N.Y. July 14, 2014) (same); *see also* Pl. Br. at 21-22 (citing authorities). Finally, Abercrombie's arguments that the

13

collective should be limited only to stock managers or to AMs who received holiday pay[4] err because, by its own admission, it paid all AMs pursuant to the same erroneous FWW method.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Court should grant Plaintiffs' motion for conditional certification and the sending of notice should be granted.

Dated:  August 25, 2014
Rye Brook, New York

By: _____
Seth R. Lesser
Fran L. Rudich
KLAFTER OLSEN & LESSER LLP
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone:  (914) 934-9200
Facsimile:   (914) 934-9220

Silvija A. Strikis
Andrew M. Hetherington
KELLOGG, HUBER, HANSEN,
 TODD, EVANS & FIGEL, P.L.L.C.
1615 M Street NW, Suite 400
Washington, DC 20036
Telephone:  (202) 326-7900
Facsimile:   (202) 326-7999

Bradley L. Berger
BERGER ATTORNEY P.C.
321 Broadway
New York, New York 10007
Telephone:  (800) 529-4444

*Attorneys for Plaintiffs*

---

[4] Abercrombie's argument that the collective should be limited to only AMs who received holiday pay (at 24) seems particularly spurious since it argues earlier in its brief that all AMs received holiday pay (at 17-18).